IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUSAN BURGESS
    *Plaintiff*,

v.

SYSTEM HIGH CORPORATION,
*et al.*
    *Defendants*.

Civil Action No. ELH-14-3895

**MEMORANDUM OPINION**

In a First Amended Complaint filed June 16, 2015 (ECF 18, "Amended Complaint"), plaintiff Susan Burgess sued her former employer, System High Corporation ("SHC"), and John McHugh, Secretary, United States Army (the "Army"), alleging employment discrimination, in violation of Title VII of the Civil Rights Act of 1964, codified, as amended, at 42 U.S.C. § 2000e *et seq.*; violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*[1] In particular, Burgess claims discrimination based on sex and disability and in retaliation for her opposition to perceived unlawful acts. ECF 18, Amended Complaint.

SHC filed an answer to the Amended Complaint. ECF 20. The Army has moved to dismiss (ECF 25), pursuant to Fed. R. Civ. P. 12(b)(1), supported by a memorandum (ECF 25-1) (collectively, the "Motion"). The Army urges dismissal on the ground that plaintiff failed to exhaust her administrative remedies, in that she never filed a complaint with the Army's Equal Employment Opportunity ("EEO") office. ECF 25-1 at 6–8, Motion. In support of its Motion,

---

[1] Plaintiff initially filed suit on December 15, 2014 (ECF 1) against Chuck Hagel, Secretary, U.S. Department of Defense. After Hagel moved to dismiss (ECF 12), McHugh was substituted for Hagel in the Amended Complaint. *See* ECF 18. In addition, plaintiff removed the ADA claim as to the Army but added the claim under the Rehabilitation Act. *Id.*

the Army submitted exhibits, including the Declaration of Roxanne Conley (ECF 25-2, "Conley Declaration"), a civilian employee in the Army's EEO office in Aberdeen, Maryland. Plaintiff opposes the Motion (ECF 26, "Opposition"), and filed exhibits in support of her Opposition. ECF 26-1, 26-2. The Army filed a Reply (ECF 27), along with another exhibit. ECF 27-1.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons stated below, I shall grant the Motion.

## I. Factual Summary

Plaintiff was employed by SHC for approximately four months, from September 27, 2013, until her termination on or about January 16, 2014. *See* ECF 18, ¶¶ 12, 40, Amended Complaint. She contends that the federal government was her "joint employer" (*id.* ¶ 17), based on a contract between SHC and the Army, to which Burgess was assigned, by which SHC provided technology protection services at the Army's facilities at Aberdeen Proving Ground ("APG") in Aberdeen, Maryland. ECF 18, ¶ 6.

The events relevant to plaintiff's suit occurred while plaintiff was working at APG, in the capacity of "Technology Protection Engineer (TPE) – Subject Matter Expert (SME)," at the Army Research and Technology Protection Center. ECF 18, ¶ 12; *see also* ECF 25-1 at 2. She was supervised by two civilian employees of the Army: Steven Chimchirian and Mike Burris. ECF 18, ¶¶ 15, 16. Burgess contends that, based on their degree of control, the Army became her joint employer. *Id.* ¶ 17.[2]

According to plaintiff, Chimchirian and Burris made disparaging remarks about her gender, her disabilities (severe osteoarthritis and degenerative disc disease), and her requests for accommodations. *Id.* ¶¶ 23, 24, 25, 26, 27. Burgess also alleges that SHC placed her on a

---

[2] For the purpose of the Motion, the Army does not contest this assertion. ECF 25-1 at 2 n.1, Motion.

Performance Improvement Plan in December 2013, based on a bogus assessment by Chimchirian. *Id.* ¶ 37. Then, in January 2014, SHC terminated plaintiff's employment. *Id.* ¶ 40. Burgess maintains, however, that at all times she met or exceeded her "legitimate job expectations." *Id.* ¶ 42.

As to SHC, on or about June 2, 2014, plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), based on gender and disability. *Id.* ¶ 8. On September 16, 2014, the EEOC issued a Notice of Right to Sue as to SHC. *Id.* ¶ 10.

As to the Army, plaintiff alleges that in January 2014 she contacted the Army's EEO office at APG "to complain about the discriminatory and retaliatory actions of [the] Army[.]" *Id.* ¶ 9. Plaintiff first spoke with Ashley L. Reid, the Complaints Manager at the Army's EEO office. ECF 26-1 at 1, Affidavit of Susan Burgess ("Burgess Affidavit"). Burgess complained about her "boss," Chimchirian, and Reid noted that he "is a civilian. . . ." ECF 26-1 at 3 (email from Reid to Conley dated 1/17/14). Reid then emailed Conley, the Army's EEO specialist at APG, and advised that Burgess "believes she is being discriminated against based upon her disability." *Id.* Plaintiff asserts: "[T]he EEO office for the U.S. Army at APG documented her complaint and referred her to the Baltimore EEOC Office, advising that she was 'not a federal employee' and would not process her complaint of discrimination." ECF 18, ¶ 9, Amended Complaint.

The parties agree that plaintiff conferred by telephone with Conley regarding her discrimination claims. *See* ECF 25-2, Conley Declaration; ECF 26-1, Burgess Affidavit. However, the parties disagree about the content of the discussions. According to the Army, Conley explained the Army's EEO process to plaintiff, and also provided plaintiff with information as to how to pursue a claim against SHC with the EEOC. ECF 25-2, ¶¶ 2, 5, 6,

Conley Declaration. Moreover, Conley maintains that she did not discourage plaintiff from initiating a complaint against the Army. *Id.* ¶ 5. Conley expressly denies that she advised plaintiff that she (Burgess) was not an Army employee for purposes of the federal discrimination laws (ECF 25-2, ¶ 4), and avers that she "never make[s] a determination as to whether a person is [a] joint employee" of the Army. *Id.* ¶ 6. Conley also disputes that she told Burgess that she had to file her complaint against the Army with the EEOC. *Id.* ¶ 7. Conley claims that, when she talked to Burgess, plaintiff "was already aware of and inclined to file her claim at the EEOC . . . ." ECF 25-2, ¶ 7.

Burgess received an email from Conley on January 23, 2014, at 7:44 a.m. It stated, in part, ECF 26-1 at 5 (emphasis added):

> As discussed yesterday telephonically, attached is the Information Inquiry with *the information on how to file an EEO complaint with the Equal Employment Opportunity Office in Baltimore*, Maryland. There [sic] website is: http://www.eeoc.gov/field/baltimore/index.cfm At the website they have information pertaining to how to file. Also you may call them . . . .
>
> If you need additional information or have any questions/concerns, please don't hesitate to contact our office. *As a reminder you have 45 calendar days from the date of the incident or the date you were aware of the incident to initiate your complaint of alleged discrimination. . . .*

Conley's email to Burgess referred to filing a complaint with the EEOC, as evidenced by the reference in the email to the EEOC website and the emphasized text. But, Conley's email also referred to a 45-day deadline for filing, which arguably supports her claim that she also informed Burgess about the Army's EEO process. This is because the only 45-day deadline is one that pertains to the "pre-complaint processing" requirements for federal employees. *See* C.F.R. § 1614.105(a)(1) (providing that an "aggrieved person must initiate contact with a Counselor within 45 days of the date" of the alleged discrimination to begin pre-complaint processing). In contrast, aggrieved persons in the private sector must file a complaint with the

EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1) ("A charge . . . shall be filed within one hundred and eighty days after the alleged unlawful employment practice[.]"); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state under Title VII; the Maryland Commission on Civil Rights is the applicable State enforcement agency.[3] *See, e.g.*, *Prelich v. Med. Resource, Inc.*, 813 F. Supp. 2d 654, 661–62 (D. Md. 2011); *EEOC v. Randstad*, 716 F. Supp. 2d 734, 739 & n.1 (D. Md. 2011).

Along with Conley's Declaration, the Army has submitted a Form 7509, titled "Information Inquiry Summary," dated January 22, 2014. *See* ECF 25-2 at 3. The Form was completed by Conley on the same date that she spoke to plaintiff. Arguably, the Form 7509 indicates that Conley advised plaintiff of both the EEO and the EEOC complaint processes. Moreover, the preprinted text of the Form specifies that its "Principal Purpose" is for use in processing discrimination complaints based on race, sex, age, disability, color, religion, and/or reprisal by "Army civilian employees, former employees . . . and some contract employees." ECF 25-2 at 3.

Box 10 on the form is titled "Contact Summary." There is an X in the box next to the following statement: "Provided general information regarding EEO complaint processing, emphasizing the **45-calendar day** prescribed time limitation for initiating the EEO complaint process and right to representation during the EEO process, including the pre-complaint intake interview." (Emphasis in original). A box directly below, titled "Other (*Explain*)", is also marked with an X. Under it, the form states: "Equal Employment Opportunity Commission – Baltimore Field Office." The contact information for the Baltimore Field Office of the EEOC is

---

[3] This agency was formerly known as the Maryland Commission on Human Relations. *See Brown v. Mass Transit Admin.*, ELH-12-3705, 2013 WL 1428527 (D. Md. Apr. 8, 2013).

below that line, including the email address, street address, and phone number. Conley also submitted the email exchange with Burgess that occurred on January 23, 2014. ECF 25-2 at 5, Conley Declaration.

In support of plaintiff's Opposition, plaintiff submitted her own Affidavit. ECF 26-1. She avers that on January 22, 2014, Conley "advised" her that she "was not 'a federal employee[,]'" and therefore "any claim [she] filed with the Army's EEO office would not be processed and would be dismissed as being outside the EEO office's jurisdiction." ECF 26-1 at 1. In addition, Conley allegedly told plaintiff that she had 45 days to file a complaint with the EEOC in Baltimore, and she did so. *Id.* at 2. According to plaintiff, Ms. Conley never informed her about any "pre-complaint" rights with the Army's EEO office. *Id.* Burgess avers that she "relied" on Conley's statements and believed that her "only course of action was to file a complaint with the EEOC. . . ." *Id.* Burgess proceeded to the EEOC within 45 days, as directed by Conley. Burgess claims that the EEOC told her she had 180 days in which to complete an Intake Questionnaire. *Id.*[4] She submitted an EEOC "Intake Questionnaire" on June 5, 2014 (ECF 26-2), which she signed on May 31, 2014. *Id.* at 4, 8. On the EEOC form, plaintiff identified her employer as "System High." *Id.* at 1. She also indicated that she was terminated by System High. *Id.* at 2. In the text, plaintiff complained about "Steve & Mike." *Id.* at 3.

In a typed attachment, Burgess stated: "I worked for System High Corporation at the U.S. Army Aberdeen Proving Grounds in Aberdeen, MD. . . ." ECF 26-2 at 5. She noted that she "reported to Army Civilian management. . . ." *Id.* Burgess outlined her claims for discrimination based on her sex and physical disability. *Id.* at 5–7. In addition, Burgess stated: "I then filed an EEOC compliant [sic] with the U.S. Army EEOC office at Aberdeen Proving

---

[4] Because Maryland is a deferral State, plaintiff would have had 300 days.

grounds on January 17, 2014." ECF 26-2 at 8.[5]

Because the Army's EEO office declined to process plaintiff's complaint of discrimination, plaintiff contends that she has "properly exhausted her administrative remedies before filing suit . . . ." ECF 18, ¶ 11, Amended Complaint. In her Affidavit (ECF 26-1 at 2), plaintiff notes that she "did not proceed . . . with filing a formal complaint with the Army's EEO office," because she relied on Conley's instructions. However, plaintiff's Opposition (ECF 26 at 11) states: "Plaintiff believed that she actually filed an internal complaint with the APG EEO office." Also, plaintiff's EEOC Complaint (ECF 26-2) states: "I then filed an EEOC compliant [sic] with the U.S. Army EEOC office . . . ." ECF 26-2 at 8. Moreover, on the EEOC Intake Questionnaire she stated that she filed a complaint with "U.S. Army EEOC office-1/ /14 Aberdeen MD." ECF 26-2 at 4.

## II. Standard of Review

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways" — either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts, outside the four corners of the complaint, preclude the exercise of subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A "district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans v. B.F. Perkins Co., A Div. of Standex Int'l Corp.*, 166 F.3d

---

[5] The exact date is handwritten and difficult to decipher.

642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

The Army brings a factual challenge because it argues that Burgess did not satisfy the exhaustion requirement that is jurisdictionally necessary to maintain a Title VII claim in federal court. ECF 25-1, Motion. In considering a factual challenge to subject matter jurisdiction, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (citation omitted); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2004) ("Wright & Miller") ("[O]nce a factual attack is made on the federal court's subject matter jurisdiction, the district judge is not obliged to accept the plaintiff's allegations as true and may examine the evidence to the contrary and reach his or her own conclusion on the matter."). Wright & Miller provides, *id.* (emphasis added):

> [If] the pleader's affidavits or other evidence show either that the court actually has subject matter jurisdiction over the case or that the nonmoving party might be able to amend to allege jurisdiction,[] the district court may deny the motion and direct the pleader to amend the pleading[] or it may dismiss with leave to amend within a prescribed period of time.[] *Only when the affidavits show that the pleader cannot truthfully amend to allege subject matter jurisdiction should the court dismiss without leave to replead*.[]

As indicated, both sides have submitted affidavits. To the extent that they conflict, I cannot make a credibility determination. But, I need not do so to resolve the Motion.

### III. Discussion

### A. Exhaustion

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). It also prohibits employers from discriminating against an employee because the employee has filed a grievance or complaint regarding an employment practice that allegedly violates Title VII's antidiscrimination provision. *See* 42 U.S.C. § 2000e–3(a); *see also Boyer–Liberto v. Fontainbleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc).

Title VII's prohibitions apply to federal employees and to private sector employees.[6] Before filing suit under Title VII, an employee must exhaust administrative remedies. *See, e.g.*, *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009); *Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006) (en banc). But, the exhaustion requirements vary for each sector.

As indicated, for purposes of the Motion, defendant does not contest that plaintiff was a joint employee of the Army. Therefore, as to a discrimination complaint against the Army, Burgess would be subject to provisions applicable to federal employees. As a prerequisite to suit, a federal employee must comply with the administrative procedures set forth in 29 C.F.R.

---

[6] Until Title VII was amended in 1972, it did not protect federal employees. *See* 42 U.S.C. § 2000e(b) (excluding the United States from the definition of "employer"). In 1972, however, Congress amended Title VII to provide that a federal employee who has exhausted his administrative remedies "may file a civil action as provided in section 2000e–5 of this title" against the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e–16(c); *see Bullock v. Napolitano*, 666 F.3d 281, 283–84 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 190 (2012).

§ 1614. *Young v. Nat'l Ctr. for Health Serv. Research*, 828 F.2d 235, 237 (4th Cir. 1987) (citing 29 C.F.R. § 1613, which contained federal employee grievance procedures before § 1614 was promulgated to replace § 1613). Notably, the "administrative remedies available for federal employees are significantly broader than the administrative remedies for employees in the private sector." *Laber*, 438 F.3d at 416.[7]

Federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). And, they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). *See also Verrier v. Sebelius*, CCB-09-402, 2010 WL 1222740, at *8 (D. Md. Mar. 23, 2010). During pre-complaint processing a "Counselor shall not attempt in any way to restrain the aggrieved person from filing a complaint." 29 C.F.R. § 1614.105(g).

In some cases, counseling will result in a withdrawal of the claim or a settlement agreement between the employee and employer. *See* 29 C.F.R. § 1614.504(a); *Campbell v.*

---

[7] A private sector employee must exhaust a different administrative procedure. The Fourth Circuit explained in *Jones*, 551 F.3d at 300–01:

> Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the EEOC. *See* 42 U.S.C.A. § 2000e-5(f)(1) (West 2003) (Title VII); 29 U.S.C.A. § 626(d) (West 1999) (ADEA). Title VII establishes two possible limitation periods for filing a discrimination charge with the EEOC. *See* 42 U.S.C.A. § 2000e-5(e)(1). "The basic limitations period is 180 days after the alleged unlawful employment practice. However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998). The same limitation periods apply regarding ADEA claims. *See* 29 U.S.C.A. § 626(d).

Upon receipt of a Notice of Right to Sue from the EEOC, an aggrieved employee must file suit within 90 days. 29 U.S.C. § 626(e).

*Geren*, 353 F. App'x 879, 882 (4th Cir. 2009). However, if the issue is not resolved with the aid of the counselor, the aggrieved person must file a formal complaint with the agency. *See* 29 C.F.R. §§ 1614.106 to 1614.108. Once the agency takes "final action" on the formal complaint, the aggrieved person may appeal the decision to the EEOC or file suit. *Id.* § 1614.110.

Exhaustion of administrative remedies is a "prerequisite to . . . suit." *Figueroa v. Geithner*, 711 F. Supp. 2d 562, 569 (D. Md. 2010). *See, e.g.*, *Jones*, 551 F.3d at 300–01 ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406–07 (4th Cir. 2013).

If a federal employee fails to comply with the administrative procedures outlined above, she has failed to exhaust her administrative remedies and is generally barred from filing suit. *See, e.g.*, *Miles*, 429 F.3d at 491; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *Frank v. England*, 313 F. Supp. 532, 536 (D. Md. 2004) ("Before an employee has standing to pursue a claim against a federal employer under Title VII, he must first exhaust the available administrative remedies by proceeding before the agency charged with the discrimination."). Failure to comply generally mandates dismissal, *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)), unless the plaintiff demonstrates that she was unaware of the time limits for contacting an EEO counselor, or the government engaged in affirmative misconduct in relation to the plaintiff seeking counseling. *Lorenzo*, 456 F. Supp. 2d at 734–35; 29 C.F.R. § 1614.105(a)(2).

Notably, timeliness provisions in Title VII, the ADEA, and other federal anti-discrimination statutes are treated as statutes of limitations. Such claims must be raised by the defendant as an affirmative defense and are subject to exceptions such as waiver, equitable tolling, and equitable estoppel. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Jones*, 551 F.3d at 300 & n.2; *Verrier*, CCB-09-402, 2010 WL 1222740, at *8. *Cf. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (urging "discipline" against applying the "jurisdictional brand" to rules that do not "govern[ ] a court's adjudicatory capacity," even where such rules are "important and mandatory"); *Jones v. Bock*, 549 U.S. 199, 212 (2007) (stating, in the context of claims under the Prison Litigation Reform Act, that exhaustion is an affirmative defense).

As indicated, the Army maintains that this Court lacks subject matter jurisdiction because Burgess failed to exhaust her administrative remedies. ECF 25-1 at 6. It asserts that plaintiff "never initiated the complaint process despite being informed of the process and the applicable deadline." *Id.* It relies, *inter alia*, on Ms. Conley's Affidavit as well as the Form 7509.

Plaintiff concedes that she did not file a formal charge against the Army with the Army's EEO office, and therefore she did not exhaust. ECF 26 at 3–4, Opposition; ECF 26-1 at 2, Burgess Affidavit. Nonetheless, plaintiff maintains that the Army "severely misled" her (ECF 26 at 12, Opposition), and that it was Conley's "misstatements" that "prevented her from filing an internal EEO complaint." *Id.* In particular, Burgess maintains that she "detrimentally relied on Ms. Conley's statements during said initial EEO telephonic counseling session and contacted the Baltimore Field office of the EEOC to file a complaint of discrimination against System High Corporation and the 'U.S. Army.'" *Id.* at 3.

Plaintiff posits that, when an employer "[i]nduce[s]" the failure to exhaust, "the aggrieved employee may be excused from meeting an administrative deadline . . . ." ECF 26 at 7, Opposition. Therefore, plaintiff insists that, on the basis of equity, the Army should be "estopped" from raising an exhaustion defense. *Id.* at 4. To support her position, plaintiff relies on the doctrines of equitable tolling and futility. Neither doctrine appears applicable.

The Army counters that "Plaintiff has failed to meet her burden of proving that the Army dissuaded her" from exhausting her remedies. ECF 27 at 4, Reply. Further, the Army asserts that the "weight of the evidence" in the record supports its assertion. *Id.* at 6.

### B. Equitable Tolling

In narrow circumstances, filing deadlines within administrative exhaustion requirements may be subject to equitable tolling. *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000). ("[P]rinciples of equitable tolling may, in the proper circumstances, apply to excuse a plaintiff's failure to comply with the strict requirements of a statute of limitations."). *See generally United States v. Kwai Fun Wong*, ___ U.S. ___, 135 S.Ct. 1625 (2015) (detailing the development of equitable tolling in federal statutory interpretation and finding that equitable tolling may apply to the time bar for bringing suit against the federal government under the Federal Tort Claims Act). However, the doctrine is used "only sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris*, 209 F.3d at 330.

In *Irwin*, 498 U.S. at 96, the Supreme Court noted that equitable tolling has been applied "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.[]" But, it observed that the Court is "much less forgiving in receiving

late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.*; *see also id.* at 96 (stating that "equitable tolling . . . [does] not extend to what is at best a garden variety claim of excusable neglect"); *Weick v. O'Keefe*, 26 F.3d 467, 470 (4th Cir. 1994).

Of particular relevance here, the Fourth Circuit has acknowledged that tolling "might be warranted in cases involving bad advice from the governmental agency charged with enforcing discrimination complaints." *Poteat v. Mack Trucks Inc.*, No. 96-1437, 1997 WL 33117, at *4 (4th Cir. Jan. 28, 1997) (per curiam). It might also be warranted when, "due to agency error or misinformation, a complainant fails to meet the time requirements for filing an agency complaint. . . ." *Bishop v. Hazel & Thomas, PC*, No. 97-2284, 1998 WL 377912, at *2 n.3 (4th Cir. July 1, 1998) (per curiam); *see also Crabill v. Charlotte Macklenburg Bd. of Educ.*, 423 Fed. App'x 314, 321 (4th Cir. 2011) ("Equitable tolling is a discretionary doctrine that turns on the facts and circumstances of a particular case.") (citations omitted); *Walton v. Guidant Sales Corp.*, 417 F. Supp. 2d 719, 721–22 (D. Md. 2006).

In this case, Burgess properly contacted the Army's EEO office. ECF 26-1 at 1–2, Burgess Affidavit; ECF 25-2 at 1, ¶ 4, Conley Declaration; ECF 25-1 at 3, Motion. However, Burgess contends that she was misinformed by the Army's EEO office as to where to file her complaint; she was directed only to the EEOC, according to plaintiff. For that reason, according to Burgess, she did not file a claim with the Army.

Plaintiff points to the inclusion of the Baltimore EEOC office's contact information on the Form 7509 (ECF 25-2 and ECF 26-1), to show that Conley erroneously referred plaintiff to the EEOC to handle her complaint. ECF 26 at 9–10, 12–13, Opposition. Yet, on the same form, Conley is listed as the "EEO Official" in Box 7 and Box 11, and the prescribed 45-day deadline in Box 10, applicable to federal employees, is described in relation to "EEO complaint

processing." Arguably, the reference to "EEO" meant the Army's EEO office. ECF 25-2; ECF 26-1. Also, in plaintiff's EEOC intake questionnaire she made no mention of her inability to file a complaint with the Army, and instead stated that she had "filed an EEOC compliant [sic] with the U.S. Army EEOC office . . . ." ECF 26-2 at 8; *see also* ECF 27 at 5–6, Reply.

Burgess also relies on cases involving the filing of untimely complaints. But, of import here, she never filed a formal charge against the Army within its EEO office, timely or otherwise. ECF 26 at 4–5, Opposition; ECF 25-1 at 6, Motion. Plaintiff overlooks this critical distinction.

The Fourth Circuit discussed equitable tolling in *Weick*, 26 F.3d 467, a Title VII case. In that case, the female plaintiff was overlooked for a promotion by the Navy, although an independent merit panel "ranked her as the top candidate. . . ." *Id.* at 468. Instead, a male counterpart, who was ranked third, was selected. *Id.* When Weick inquired about the decision with higher-ranking officials, she was intentionally misled as to the employment decision, and only learned of falsified and unfair documentation in her personnel file about three years later. *Id.* At that time, Weick sought to exhaust her administrative remedies. *Id.* Nevertheless, the district court granted the Navy's summary judgment motion, on the ground that the administrative claim was untimely. The Fourth Circuit reversed. *Id.* It was of the view, for reasons not pertinent here, that Weick's administrative action was not untimely. But, of relevance here, the Court said that, even if the administrative filing were untimely, Weick "would prevail on equitable grounds," because she had "exercised due diligence in preserving her legal rights." *Id.* at 470. Therefore, even if the "time limit had applied," the Court said that it "would excuse an untimely filing under equitable tolling principles." *Id.* at 471.

Burgess argues that *Weick* is directly applicable because Conley similarly "breached the duty prescribed in 29 C.F.R. § 1614.105(b)(1) by providing Plaintiff with inaccurate information during the informal counseling process." ECF 26 at 9. Further, she avers that Conley breached this duty by "fail[ing] to properly advise Plaintiff of her rights and responsibilities[.]" ECF 26 at 9–10. Even assuming, *arguendo*, that Conley misinformed plaintiff, there are crucial distinctions between plaintiff's position and that of the plaintiff in *Weick*. In *Weick*, the plaintiff was actively deceived by higher-ranking officials. In other words, she was "tricked by [her] adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96. There is no allegation here that Conley intentionally tricked Burgess. ECF 25-2, ¶ 4, Conley Declaration. *See generally* ECF 18, Amended Complaint. And, when the *Weick* plaintiff learned of the Navy's wrongdoing, she promptly sought to exhaust her administrative remedies before filing suit. *Weick*, 26 F.3d at 468. Unlike in *Weick*, plaintiff never filed an administrative action, and has not offered any explanation for her inaction. ECF 26 at 3–4, Opposition.

Although plaintiff frames her argument as one seeking equitable tolling of the deadline for filing of an administrative complaint, she actually seeks a waiver of her obligation to exhaust. Equitable tolling is not a vehicle to avoid the administrative process altogether. Indeed, the "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). As explained by the Fourth Circuit in *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005) (internal citations omitted):

> The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation.

>First, an administrative charge notifies the employer of the alleged discrimination. This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning.
>
>Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.

At least by May 15, 2015, when defendant filed an initial motion to dismiss (ECF 12), plaintiff knew that she had failed to exhaust her administrative remedies. *See* ECF 12-1 at 6. Notwithstanding her knowledge of the Army's exhaustion defense, plaintiff continued with her case in federal court, at her own peril, without attempting to file a belated administrative complaint. *See generally* 29 C.F.R. § 1614.105(a)(2) (providing possible grounds for an aggrieved party to file a complaint after a 45-day deadline has passed). The purposes of the exhaustion requirement have not been served in this case.

To be sure, plaintiff was self-represented when she initially contacted Conley. But, she eventually secured counsel and has been represented throughout the duration of her case in federal court. These circumstances do not lend themselves to "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party[.]" *Harris*, 209 F.3d at 330. In failing to file a formal complaint with the Army's EEO office at any point, and by disregarding the steps for exhaustion outlined in 29 C.F.R. § 1614, plaintiff has "failed to exercise due diligence in preserving [her] legal rights." *Irwin*, 498 U.S. at 96. Accordingly, I decline to apply the equitable tolling doctrine to permit an exception to Title VII's exhaustion requirements.

### C. Futility

In the alternative, plaintiff posits that the exhaustion requirement should be excused because pursuing the administrative process would have been futile. ECF 26 at 12–13,

Opposition. According to plaintiff, she was misinformed that she had 45 days to file a complaint with the EEOC, which is "corroborated by the EEOC-Baltimore address being listed **directly below** the '45-calendar day prescribed time limitation for initiating the EEO complaint process'. . . ." ECF 26 at 13 (emphasis in original). She claims she "never learned that the APG EEO office would accept or process her formal EEO complaint against the Army" (ECF 26 at 12), and that Conley informed her that "the Army's EEO office could not do anything to remedy the discrimination." *Id.*

In weighing a claim of futility, "[a]bsent a clear showing that an administrative agency has taken a hard and fast position that makes an adverse ruling a certainty, a litigant's prognostication that he is likely to fail before an agency is not a sufficient reason to excuse the lack of exhaustion." *Thetford Props. IV Ltd. P'ship v. U.S. Dep't of Housing & Urban Dev.*, 907 F.2d 445, 450 (4th Cir. 1990). In *Murphy v. West*, 945 F. Supp. 874, 876 (D. Md. 1996), Judge Andre Davis, then a District Judge, found no "substantial support for the creation of a 'futility' exception to the Title VII exhaustion requirement," adding that there was "certainly no support for the assertion that the administrative process may be disregarded in its entirety." *Id.*

I am unaware of any guidance provided by the Fourth Circuit on the futility exception in the context of Title VII claims. *See Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 641 (D. Md. 2002) (clarifying that plaintiff had incorrectly interpreted *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326 (4th Cir. 1983), as creating a futility exception for Title VII exhaustion, but *Lilly* "did not hold that a . . . plaintiff may be excused from the exhaustion requirement just because he suspected any attempts at conciliation would be fruitless"); *see also Murphy*, 945 F. Supp. at 876–77; *Brundin v. United States*, No. 95–2689, 1996 WL 22370

(S.D.N.Y. 1996) (observing that even though "some courts have waived exhaustion of administrative remedies on the ground of futility, the concept is narrowly construed").

As noted, when reviewing a Fed. R. Civ. P. 12(b)(1) motion, district courts are permitted to assess facts beyond the pleadings and are "not obliged to accept the plaintiff's allegations as true and may examine the evidence to the contrary and reach [their] own conclusion on the matter." *See* Wright & Miller § 1350. But, even construing the facts in the light most favorable to plaintiff, the record does not reflect a "clear showing" that the Army conveyed information to plaintiff "that [made] an adverse ruling *a certainty*." *Thetford Props.*, 907 F.2d at 450 (emphasis added).

Plaintiff first spoke with Ashley L. Reid, Complaints Manager at the Army's EEO office. ECF 26-1 at 1, 3, Burgess Affidavit. Reid emailed Conley (ECF 26-1), and wrote that Burgess "believes she is being discriminated against based upon her disability." *Id.* at 3. She also noted that Burgess was "a contractor, however, her boss—Mr. Steven Chimchirian—is a civilian [Army employee.]" *Id.* In addition, Reid asked Conley to contact plaintiff regarding the matter. *Id.* This first contact between plaintiff and the Army's EEO office does not suggest the Army "took a hard and fast position" against plaintiff's potential complaint against her supervisors. To the contrary, plaintiff was referred to Conley. And, neither the reference to the Baltimore EEOC office contact information on the From 7509, nor Conley's email providing plaintiff with the Form 7509, suggests with certainty that the Army EEO office would make "an adverse ruling" in regard to Burgess's potential complaint against the Army. *Thetford Props.*, 907 F.2d at 450.

As indicated, plaintiff has not explained why she *never* attempted to exhaust her administrative remedies under 29 C.F.R. § 1614, even after learning of this deficiency in her claim. Burgess's belief that filing with the Army EEO office would have been futile amounts

only to a "prognostication that [she was] likely to fail before" the Army, but it "is not a sufficient reason to excuse the lack of exhaustion." *Thetford Props.*, 907 F.2d at 450.

### IV. Conclusion

Plaintiff has failed to show that material jurisdictional facts are in dispute as to the Army's claim that plaintiff did not properly exhaust administrative remedies before filing suit against the Army in federal court. Plaintiff has also failed to show a basis for equitable tolling or waiver of the administrative exhaustion requirement. Therefore, I will grant the Army's Motion and dismiss the suit as to the Army. An Order follows.


Date:  November 10, 2015                     /s/
                                          Ellen L. Hollander
                                          United States District Judge